# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3491

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Jamarr Mack, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted:   April 15, 2003
Filed:   September 11, 2003

_____

Before MORRIS SHEPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant-Appellant Jamarr Mack appeals his conviction and sentence under 18 U.S.C. § 922(g)(3) as an unlawful user of a controlled substance in possession of

a firearm.[1]  He alleges that the evidence was insufficient to support his conviction, that the district court[2] erred in admitting evidence of prior incidents involving his possession of controlled substances or firearms, and that the district court erred in enhancing his sentence for possession of a firearm in connection with another felony. We affirm.

I.

On January 26, 2002, the victim of a recent car theft reported seeing two men sitting in her stolen car in a restaurant's parking lot.  Two officers, driving separately, responded to the call.  One of the officers confirmed the earlier theft report while en route to the restaurant.  Upon arrival at the restaurant, the officers observed Mack in the driver's seat and Lamark Franklin in the front passenger seat.  As they approached the car, the officers told Franklin and Mack to keep their hands in sight.  Franklin and Mack did not immediately comply.  When the officers reached the vehicle, they smelled marijuana and arrested Mack and Franklin for tampering with a motor

---

[1]18 U.S.C. § 922(g)(3) provides:

It shall be unlawful for any person–

> (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)); . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting interstate commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped in or transported in interstate or foreign commerce.

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

vehicle.[3]  The officers then conducted a search incident to arrest.  On Mack, they found an empty shoulder holster, a small bag of marijuana (later determined to be 5.6 grams of marijuana), and a bag containing twenty .38 caliber cartridges.  In the car the officers found a Rossi .38 caliber revolver as well as three pistols: a Colt .45, a Bryco Arms 9mm, and a .357 magnum.  The officers found no roaches, marijuana cigarette butts, paraphernalia or other physical evidence to suggest recent marijuana use by Mack or Franklin.

Prior to trial, the government provided the defense with reports of three prior incidents involving Mack's possession of drugs or firearms.  Mack submitted a motion in limine to exclude evidence regarding these three incidents.  He specifically objected based on the remoteness of the prior incidents.  The district court overruled his motion and later rejected Mack's renewed objections made during trial when the government offered testimony relevant to the incidents.

The first incident occurred in September 1999 when an officer reportedly saw Mack discard four small bags that were later tested and determined to contain a total of six grams of marijuana.  The officer reported that the quantity was consistent with either purchase or sale.  Mack was arrested but not prosecuted for the September 1999 incident.

The second prior incident occurred in December 1999 when Mack was arrested and prosecuted for misdemeanor possession of marijuana.  An officer testified that,

---

[3]Under Missouri law, Tampering in the First Degree is a class C felony.  Mo. St. 569.080.1.(2) provides:

A person commits the crime of tampering in the first degree if: . . . (2) He knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile . . . without the consent of the owner thereof.

after stopping a vehicle for having improper license plates, his partner saw Mack, a passenger in the vehicle, remove a plastic bag of suspected marijuana from his pants and attempt to hide it between the vehicle's front seats. After the officers seized the bag and arrested Mack, Mack reportedly said, "Come on man, why you going to lock me up? I ain't got nothing but an ounce of weed." In fact, the officers seized 49.87 grams of marijuana from Mack. Mack was not tested for drugs and the testifying officer did not claim to have found any paraphernalia or to have seen Mack smoking the marijuana.

The third prior incident occurred in December 2001 when a woman named Ola Jefferson called police and reported that Mack had come to her house late at night, accused her niece of stealing "three bags of weed", and proceeded to shoot a gun in the air while ranting about the theft of his drugs. Ms. Jefferson testified in detail about the incident, claimed to have known Mack his whole life, but did not claim to have seen him with any marijuana on the night of the incident or at any time for years prior to his trial.

Prosecutors did not introduce any blood, tissue, hair, or urine samples or test results to demonstrate Mack's drug use at the time of his January 2002 arrest or at the times of the earlier incidents. The officers who testified concerning the January 2002 arrest admitted that they did not see Mack or Franklin smoking the marijuana. The officers testified that they smelled marijuana as they approached or opened the car, but neither officer was asked specifically whether the smell was marijuana smoke or the pungent odor of unburned marijuana. One of the officers admitted during cross examination that she failed to report the odor of marijuana in her police report.

Mack did not offer any evidence at trial. After the government submitted its case, Mack made an oral motion for acquittal arguing that the evidence was insufficient to demonstrate that he was a user of a controlled substance. In this motion, he again objected to the admission of the evidence concerning the prior

incidents. In addition, he argued for the first time that the prior incidents were not relevant because they did not include evidence of actual drug use. The district court overruled his motion, and the jury convicted Mack, inferring his status as a user of a controlled substance from the evidence as described above.

Prior to sentencing, Mack made several objections to the Pre-Sentence Report (PSR). In particular, he objected to a proposed increase in his offense level for the number of firearms under U.S.S.G. § 2K2.1(b)(1)(A) and for possession of firearms in connection with another felony offense under U.S.S.G. § 2K2.1(b)(5). In support of these objections, Mack introduced a copy of the state court complaint charging him with tampering in the first degree. In the complaint, the arresting officer swore under oath that Mack possessed two firearms, rather than four as charged in the federal indictment. Mack also argued that he had not been found guilty beyond a reasonable doubt of "another felony offense" because he had only been charged with tampering in the first degree and that the evidence at trial merely showed that he had been sitting in the driver's seat of the stolen car at the time of his arrest. At trial, the government demonstrated that the firearms were present in the stolen vehicle when Mack was arrested. The government did not present evidence to demonstrate how the firearms aided in the commission of the "other felony offense" of tampering. The district court overruled Mack's objections to the PSR.

On appeal Mack argues that the district court erred in admitting evidence of his 1999 arrests, that the evidence was insufficient to prove that he was a user of controlled substances, and that the district court erred in increasing his sentence based on the use of the firearms in connection with the felony of tampering.

I.

The district court's rejection of Mack's motion for acquittal constituted a sufficiency of the evidence determination. We "will reverse a conviction for

insufficient evidence only when we conclude, viewing the evidence in the light most favorable to the government, that no reasonable juror could find guilt beyond a reasonable doubt." United States v. Alvarez, 254 F.3d 725, 727 (8th Cir. 2001). To make this sufficiency of the evidence determination, the district court first construed the meaning of the phrase "user of a controlled substance" as found in 18 U.S.C. § 922(g)(3). The district court's statutory construction is a legal determination that we review de novo. Borrero v. Aljets, 325 F.3d 1003, 1005 (8th Cir. 2003).

In support of his motion for acquittal, Mack presents two distinct arguments. First, he argues that the evidence proved only that he possessed marijuana, not that he ever used marijuana or could be classified as a "user of any controlled substance", which, he argues, requires proof of substantial, repeated use. 18 U.S.C. § 922(g)(3). Second, he argues that even if the evidence were sufficient to permit an inference of use, no evidence demonstrated a temporal nexus between his use of a controlled substance and his possession of a firearm, i.e., there was no evidence that he actually used a controlled substance at the same time that he was discovered to be in possession of a firearm.

We address Mack's second argument first. We held in United States v. McIntosh, 23 F.3d 1454, 1458 (8th Cir. 1994), that 18 U.S.C. § 922(g)(3) does not require proof of contemporaneous use of a controlled substance and possession of a firearm. Id. (rejecting a defendant's argument that Section 922(g)(3) demanded proof of a strict temporal nexus between drug use and firearm possession and stating, "[t]he plain language requires that the government only prove McIntosh was an 'unlawful user' or addicted to a controlled substance during the time he possessed firearms."). Accordingly, it was not necessary to prove that Mack was actually smoking marijuana at the time that the officers discovered him in possession of firearms. It was sufficient under McIntosh for the government to demonstrate that Mack was a "user of any controlled substance" during the period of time he possessed the firearms.

-6-

Turning to Mack's first argument, we cannot say that the evidence, viewed in a light most favorable to the government, mandates the conclusion that no reasonable juror could have found guilt beyond a reasonable doubt. Jurors could have interpreted the evidence surrounding Mack's January 2002 arrest to indicate drug use at the time of arrest. He possessed a user quantity of marijuana. The arresting officers testified that they smelled marijuana. The failure of the prosecution and the failure (or strategic decision) of the defense to extract a more detailed explanation from the officers regarding the nature of the marijuana odor left the jury free to choose between two reasonable inferences based on the officers' testimony and the balance of the evidence: that the smell was that of burned marijuana or that the smell was that of unburned marijuana.

The absence of corroborating physical evidence, while tending to support Mack's position that he did not smoke marijuana in the vehicle, is not a sufficient basis for us to conclude that the jury acted unreasonably. As noted by the government, the failure by Mack and Franklin to immediately comply with the officers' demand that they show their hands provided an opportunity for them to swallow physical evidence (such as partially burned marijuana cigarettes). Further, the delay between the time when the owner spotted her vehicle and when officers arrived at the scene provided an opportunity for Franklin and Mack to dispose of evidence. Accordingly, the jury reasonably could have discounted the impact of the absence of corroborating physical evidence. In addition, the jury could have viewed it as unlikely that the officers had smelled unburned marijuana based on the facts that the quantity of marijuana was small, the marijuana was in a bag, and the bag was concealed in Mack's pants pocket. A jury is free to adopt any reasonable inference supported by the evidence and we must view the facts and all reasonable inferences from those facts in a light most favorable to the jury's verdict. United States v. Big Crow, 327 F.3d 685, 688 (8th Cir. 2003); United States v. Spear, 734 F.2d 1, 2 (8th Cir. 1984) (noting that circumstantial evidence is no less probative than direct evidence and that a jury's reasonable inferences must stand even if supported only by

circumstantial evidence). We cannot reject a jury's conclusions merely because the jury may have chosen the arguably weaker of two contradictory, albeit reasonable, inferences.

Even though the jury reasonably could have inferred that Mack actually used marijuana at the time of his arrest, it was not required to do so. Other evidence, viewed in a light most favorable to the government, also supports the conclusion that Mack was a user of marijuana. Mack acted erratically and violently in December of 2001 when confronted with the apparent theft of his marijuana. Ms. Jefferson testified that Mack arrived at her door agitated, claimed to have been there earlier while she was out, and claimed that Ms. Jefferson's niece had stolen his three bags of weed. Ms. Jefferson called her niece downstairs, and her niece denied the accusation. Mack then left saying, "I'm ganked" and "there were th[r]ee fat sacks". He continued carrying-on outside Ms. Jefferson's door, called himself "Craz-Loc", said that he wasn't going to get "ganked", and said that he had a "four-five". Ms. Jefferson then saw him pull out a handgun and fire it into the air. Given the fact that Mack's anger was related to the theft of his illegal drugs, it would not have been unreasonable for a jury to infer drug use at the time of the incident described by Ms. Jefferson, approximately one month before Mack's arrest.

Finally, it was permissible for the jury to infer user status based on the quantity of marijuana that Mack possessed at the time of his arrest. Two permissible, reasonable inferences that the jury could have drawn from the fact of Mack's possession were that his marijuana was for the purpose of personal use or for the purpose of distribution. Interestingly, Mack argues the latter. We frequently rely on drug quantity as evidence of defendants' intended purpose for disposition of their drugs, i.e. personal use or sale. In United States v. Brett, 872 F.2d 1365, 1370 (8th Cir. 1989), we held that an intent to distribute may be shown by direct or indirect evidence and that it may be inferred solely from the possession of a large quantity of drugs. In United States v. Oleson, 310 F.3d 1085, 1090 (8th Cir. 2002), we relied in

part on the discovery of user quantities of narcotics in a defendant's home to support the jury's finding of user status under Section 922(g)(3). Finally, in United States v. Armstrong, 253F.3d 335, 336 (8th Cir. 2001), we recognized a jury's ability to rely on quantity to differentiate between drugs for personal use and drugs for distribution. In Armstrong, we held that a jury had not reached an inconsistent verdict when it found a defendant guilty merely of possession for two incidents involving 28.02 grams and 35.35 grams of methamphetamine, but guilty of possession with intent to distribute for a third incident involving 96.4 grams of methamphetamine. Id. Because it was permissible for the jury to infer user status based on Mack's possession of a user quantity of marijuana, the district court properly rejected Mack's motion for acquittal.

## II.

We review the district court's decision to admit the evidence of Mack's prior drug use and firearms possession for abuse of discretion. Oleson, 310 F.3d at 1091. "Even where we find that the district court has abused its discretion with respect to an evidentiary ruling, we will not reverse the conviction if the error was harmless." Id. (quoting United States v. Lupino, 301 F.3d 642, 645 (8th Cir. 2002)). We note that Mack conceded that the third incident, the December 2001 incident involving Ms. Jefferson, occurred less than one month prior to his arrest and was, therefore, not too remote in time to be admissible. Accordingly, our review is limited to whether the district court abused its discretion when it rejected Mack's remoteness arguments and admitted as relevant the evidence of his September and December 1999 drug arrests.

As noted above, we held in McIntosh that there is no strict temporal element within Section 922(g)(3) that would require the government to prove that a specific instance of drug use occurred simultaneously with a defendant's firearm possession. McIntosh, 23 F.3d at 1458. Nothing in McIntosh or our other cases suggests,

however, that evidence of past drug use remains admissible indefinitely for the purpose of showing user status under Section 922(g)(3). The government urges that we should look to the reasonableness standard applied for the purpose of assessing temporal limits under Federal Rule of Evidence 404(b) to determine how far back in time we may consider evidence of drug use for the purpose of Section 922(g)(3). In addition, the government cites a Fifth Circuit case involving the admission of evidence regarding repeated instances of drug use throughout a seven month period. United States v. Edwards, 182 F.2d 333 (5th Cir. 1999). Mack argues generally that the evidence regarding his earlier instances of drug possession, over two years prior to his arrest, does not relate to the period of time during which he was shown to possess a gun. In addition, Mack argues that evidence of drug use is not Rule 404(b) character evidence and that the government's cited case law is inapposite because it involved uninterrupted evidence of ongoing drug use.

Because evidence regarding the December 2001 incident and Mack's January 2002 arrest provide more than sufficient evidence to support the jury's verdict, we do not need to determine whether the district court erred in its admission of evidence concerning the 1999 arrests. While we believe that aging evidence of drug use eventually loses its probative value under Section 922(g)(3), we need not draw any lines in the present case. To the extent that a two-year gap in the evidence of Mack's drug use might have made admission of the prior arrests improper, any error in this regard was harmless.

III.

We review the district court's application of the Sentencing Guidelines de novo. United States v. Scolaro, 299 F.3d 956, 957 (8th Cir. 2002). We review factual findings of the district court in applying the Sentencing Guidelines for clear error. United States v. Johnson, 60 F.3d 422, 423 (8th Cir. 1995). The district court's

findings regarding a defendant's purpose for possessing a firearm are factual findings subject to clear error review.  Id.

U.S.S.G. § 2K2.1(b)(5) provides a four level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense . . ."  Id.  "'Felony offense' as used in subsection (b)(5), means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained."  Application Note 7 to U.S.S.G. § 2K2.1.  It is undisputed that tampering in the first degree is a felony offense.  Mack argues that the government did not prove by a preponderance of the evidence that the firearms he possessed at the time of arrest were possessed "in connection with" the felony offense of tampering.  United States v. Hammer, 3 F.3d 266, 272 (8th Cir. 1993) (setting forth preponderance of the evidence standard for sentencing determinations).  Specifically, Mack argues that, because the government failed to present evidence tending to show how the firearms were used in the commission of the felony offense of tampering, there could be no finding that they were "used or possessed in connection" with the other offense.  We disagree.

The district court did not clearly err in determining that the driver of a stolen vehicle containing four handguns used or possessed those handguns in connection with the underlying felony of tampering with the same vehicle.  We held in Scolaro, 299 F.3d at 957, that U.S.S.G. § 2K2.1(b)(5) does not require proof of use of the firearm in the commission of the underlying felon. Rather, the government need only prove that the firearm was used or possessed in connection with the underlying felony.  Id. (holding that the guideline applies "where the weapon is used or possessed *in connection with* another felony, not in the commission of the felony") (emphasis in original).  Here it is undisputed that Mack occupied the driver's seat of the stolen vehicle at the time of his arrest.  He and Franklin had four handguns within the car.  Mack wore a shoulder holster which likely held one of the guns prior to the officers' arrival at the vehicle.  Mack carried a bag of ammunition.  As determined by

-11-

the Ninth Circuit in a similar case, a defendant's maintenance of a firearm at an easily accessible location while in a stolen car permits the inference that the firearm emboldened the defendant to continue his illegal conduct. <u>United States v. Routon</u>, 25 F.3d 815, 819 (9th Cir. 1994). This connection is sufficient to satisfy U.S.S.G. § 2K2.1(b)(5).

Finally, Mack cites no authority to support his argument that <u>Ring v. Arizona</u>, 536 U.S. 584 (2002) requires submission to the jury of sentencing enhancements that do not raise the maximum sentence, and we reject his arguments in this regard.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.