# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 06-1155

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | Appeal from the United States |
| Plaintiff - Appellee, | * | District Court for the |
| | * | Western District of Missouri |
| v. | * | |
| | * | [PUBLISHED] |
| Robert Joseph Harper, Jr., | * | |
| | * | |
| Defendant - Appellant. | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |

_____

Submitted: June 12, 2006
Filed: October 24, 2006 (corrected 11/2/06)

_____

Before LOKEN, Chief Judge, ARNOLD, Circuit Judge, and DOTY,[1] District Judge.

_____

DOTY, District Judge.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

Robert Joseph Harper appeals his conviction and sentence on charges of unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g), and possession of stolen firearms, in violation of 18 U.S.C. § 922(j). Specifically, he argues that the district court erred by denying his motion to suppress statements,[2] stating to the venire that an indictment is based on probable cause, denying his motion for judgment of acquittal, refusing to instruct the jury on his defense of coercion and enhancing his sentence pursuant to Sentencing Guidelines §§ 2K2.1(b)(5) and 3C1.2.[3] For the following reasons, we affirm.

## I.    BACKGROUND

On April 14, 2004, a resident of Lebanon, Missouri, reported that a Chevrolet Trailblazer had been stolen. In addition, numerous items were stolen from a safe in a separate residence in Lebanon, including a nine-millimeter handgun and two fully loaded magazine clips. At some point on April 16, 2004, a resident of Crocker, Missouri, reported that eight rifles had been stolen from his home. That same day, Missouri State Highway Patrol Trooper Jason Glendenning observed the stolen Trailblazer parked in a right-of-way. As Glendenning drove towards the vehicle, the Trailblazer pulled out of the right-of-way and rapidly accelerated. A brief high-speed chase ensued at speeds in excess of ninety miles per hour over approximately four miles of county roads. The chase ended when the Trailblazer drove through a ditch, struck an embankment, traveled briefly on westbound Interstate-44 and spun out on the eastbound shoulder of Interstate-44.

---

[2] The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable James C. England, Magistrate Judge for the Western District of Missouri.

[3] The Honorable Dean Whipple, Chief Judge of the United States District Court for the Western District of Missouri.

Glendenning approached the Trailblazer on foot with his weapon drawn and ordered the driver out of the vehicle. Harper exited the Trailblazer. Glendenning immediately handcuffed Harper and escorted him to the median for safety reasons, where he was assisted by several off-duty officers who had witnessed the incident. According to Glendenning, Harper was conscious and did not initially seem to have suffered any injuries. Shortly thereafter, however, Harper appeared to have a seizure and Glendenning called an ambulance. After Glendenning escorted Harper to the median, he returned to secure the vehicle and observed numerous firearms inside the Trailblazer. In the ambulance, Harper was conscious, sitting upright and talking to ambulance personnel about his condition. Glendenning entered the ambulance and advised Harper of his Miranda rights. Harper told Glendenning he understood those rights. Glendenning asked two questions: whether the Trailblazer was stolen and whether the firearms inside the vehicle were stolen. Harper answered both questions affirmatively. Glendenning seized numerous items from the Trailblazer that had been reported stolen, including eight rifles, a nine-millimeter handgun and two magazine clips that contained seventeen rounds of ammunition.

At approximately 7:00 p.m., Harper was taken by ambulance to a hospital. At the hospital, Harper told Missouri State Highway Patrol Sergeant Richard Fredendall that he wanted to make a statement and that he had been set up by a Laclede County deputy sheriff. Following Harper's release from the hospital, Fredendall took him to the Laclede County Sheriff's Department and informed Glendenning that Harper wanted to make a statement. At approximately 11:00 p.m., Glendenning and Missouri State Highway Patrol Trooper Bryan Arnold interviewed Harper. Glendenning first asked Harper if he remembered his Miranda rights. Harper stated that he remembered being advised of those rights and wanted to explain why he was in possession of the stolen vehicle. Harper then told the officers that he was driving the Trailblazer at the direction of Laclede County Deputy Sheriff John Young.

On July 23, 2004, a grand jury returned a two-count indictment against Harper charging him with being a felon in possession of firearms and possessing stolen firearms, in violation of 18 U.S.C. §§ 922(g) and (j) respectively. Harper moved the district court to suppress all statements he made on April 16, arguing that the statements were in violation of his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel because his waiver of his Miranda rights was not knowing or voluntary. At the suppression hearing, Harper testified that he was unconscious following the accident, gained consciousness only after he was in the ambulance and did not remember being advised of his Miranda rights. Glendenning, Fredendall and Arnold testified on behalf of the government. The magistrate judge determined that the testimony of Glendenning and Arnold established that Glendenning advised Harper of his Miranda rights in the ambulance and that the weight of the evidence supported a finding that Harper did not suffer an injury that impaired his mental capacity to knowingly and voluntarily waive his those rights. The magistrate judge further determined it was not necessary for a second Miranda warning to be given at the sheriff's department because the interview occurred within hours of Glendenning advising Harper of his Miranda rights, Harper acknowledged that Glendenning had previously advised him of those rights, there was no interruption in his custody status and Harper intentionally initiated the interview. Adopting the report and recommendation of the magistrate judge, the district court denied Harper's motion to suppress.

Harper proceeded to trial on June 27, 2005. Following the court's voir dire, defense counsel began to question the members of the jury panel on their understanding of an indictment as follows:

> Ladies and Gentlemen, in a criminal case the first pleading that is filed is an indictment. Is there anybody who does not understand that an indictment is nothing more than an accusation? Or, to state it differently,

is there anybody here who feels that an indictment is an evidence of something? Is there anybody here who would kind of assume where there's smoke, there's fire, and if they filed an indictment there must be something to it? And it's okay if you feel that way. Now is the time to be honest with us.

(T. Tr. at 102-03.) One panel member answered affirmatively. Defense counsel asked the panel member's name and began to further question the potential juror on the topic. However, the district court promptly interrupted, stating: "No, wait a minute. I'm going to stop this. Now, there is probable cause or an indictment wouldn't be returned. I'm not going to let you ask any further questions on that. Go to your next question." (Id. at 103.) Following completion of defense counsel's voir dire, the district court stated:

I apologize for cutting [counsel] off on the questioning about the indictment. Now, an indictment is merely a formal legal proceeding but it's based upon probable cause that the crimes have been committed and somehow the defendant is involved with it, but it's no indication of an individual's guilt at all. Now, responding to that, can you still be a fair and impartial juror?

(Id. at 106.) The district court directed the last question to the panel member who said he believed an indictment to be evidence. In response, the gentleman stated "No. I'm kind of suspicious." (Id.) Harper's attorney did not object to either of the district court's above statements regarding probable cause. When defense counsel subsequently challenged the potential juror for cause, the district court excused him from the panel.

Following jury selection and prior to commencement of trial, the district court instructed the impaneled jury that:

> [The] charges are set forth in what is called an indictment. You should understand that an indictment is simply an accusation. It is not evidence of anything. The defendant has pleaded not guilty, and is presumed to be innocent unless and until proved guilty beyond a reasonable doubt. It will be your duty to decide from the evidence whether the defendant is guilty or not guilty of the crime charged.

(J.A. at 70.) In its final instructions to the jury, the district court further instructed the jury as follows:

> As I told you at the beginning of the trial, an indictment is simply an accusation. It is not evidence of anything. To the contrary, the defendant is presumed to be innocent. Thus the defendant, even though charged, begins the trial with no evidence against him. The presumption of innocence alone is sufficient to find the defendant not guilty and can be overcome only if the Government proves, beyond a reasonable doubt, each essential element of the crime charged.

(J.A. at 83.)

At trial, Harper, the only defense witness, did not deny possession of the firearms. Rather, he testified that his possession was the result of coercion. According to Harper, Deputy Young asked him if he would be a cooperating informant, but Harper refused Young's request and told his probation officer, who said that she would talk to Young. Harper testified that Young then arrested him,

drove him to an abandoned car lot, put a gun to his head and told Harper that he did not know who he was messing with. (T. Tr. at 212.) Young then told Harper that he would give him a break only because he was his ex-brother-in-law but that Harper had to do two favors for Young, one of which was driving the Trailblazer. Harper testified that following the incident in the car lot Young called Harper's sister's cell phone to tell Harper to drive the Trailblazer from Lebanon to an abandoned rock quarry at Springfield, Missouri. Harper further testified that when he saw Trooper Glendenning's highway patrol vehicle he thought it was Deputy Young's vehicle. According to Harper, he fled because he feared for his life thinking Young was going to harm him, and he was attempting to find law enforcement to help him.

At the close of all evidence, Harper moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied the motion. At the charge conference Harper requested that the court instruct the jury on the defense of coercion, arguing Harper's testimony offered evidence that he engaged in the offense conduct and possessed the firearms only because Young threatened his life. The district court denied the request based on the court's determination that Harper's testimony was not credible and the evidence did not support a defense of coercion. On June 28, 2005, the jury found Harper guilty on both counts of the indictment.

In the Presentence Investigation Report, the probation officer determined that a four-level enhancement applied pursuant to Sentencing Guidelines § 2K2.1(b)(5) because Harper possessed the firearms in connection with the felony offenses of tampering in the first degree and resisting arrest by flight. The probation officer further enhanced Harper's offense level by two levels pursuant to Sentencing Guidelines § 3C1.2 because he recklessly created a substantial risk of death or bodily injury during his high-speed flight from Glendenning. Harper objected to both enhancements. At the sentencing hearing, the district court overruled both objections, determined both enhancements applied and calculated an advisory sentencing range of 324 to 405 months imprisonment. The court then sentenced Harper to 350 months

imprisonment on count 1, to be served concurrently with a 120-month term of imprisonment on count 2.

On appeal, Harper challenges the district court's denial of his motion to suppress, statements to the venire regarding the existence of probable cause, denial of his motion for a judgment of acquittal, refusal to instruct the jury on the coercion defense and enhancement of his sentence pursuant to Sentencing Guidelines §§ 2K2.1(b)(5) and 3C1.2.

## II.    DISCUSSION

### A.    Motion to Suppress Statements

We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo. United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005).  We will reverse a district court's denial of a motion to suppress only if the district court's decision "is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006).

An individual's waiver of the Fifth Amendment privilege against self-incrimination and Sixth Amendment right to counsel is valid if made voluntarily, knowingly and intelligently. Miranda v. Arizona, 384 U.S. 436, 444 (1966).  A waiver is voluntary if it "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). Stated differently, a waiver is involuntary if under the totality of the circumstances "the defendant's will was overborne." Annis, 446 F.3d at 855.  A waiver is knowing

and intelligent if made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421. We look to the totality of the circumstances to determine whether a suspect had the requisite level of comprehension to knowingly waive his rights and whether the waiver was voluntary. Id.; see also Annis, 446 F.3d at 856 (pain from injuries combined with methamphetamine withdrawal did not make voluntary or knowing waiver impossible when defendant did not appear to be in pain or suffering from withdrawal, made no complaints and answered questions reasonably); United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995) (statement not involuntary due to intoxication when effects of alcohol had worn off and defendant did not appear intoxicated); United States v. Casal, 915F.2d 1225, 1229 (8th Cir. 1990) (defendant who had not slept for five days and who was on methamphetamine capable of making voluntary statement when he did not appear to be intoxicated and talked coherently).

Harper argues that his waiver was neither voluntary nor knowing because he was unconscious following the automobile accident and the officers' conduct created a coercive environment. As to his consciousness, the magistrate judge found the weight of the evidence established Harper did not suffer from a mental impairment that prevented him from making a knowing waiver of his Miranda rights. Specifically, the magistrate judge found the consistent and credible testimony of Troopers Glendenning and Arnold established that Harper was conscious following the accident and capable of making a knowing waiver of his rights in the ambulance. Glendenning testified that when he advised Harper of his rights, Harper was sitting upright, his eyes were open, he was alert and responsive to others, he did not complain of pain or injuries, he acknowledged that he understood his rights and he affirmatively answered Glendenning's questions. Arnold testified that when Glendenning asked Harper later that evening if he remembered having his Miranda rights read to him in the ambulance, Harper stated that he did. The magistrate judge found Harper's testimony that he was unconscious and did not remember being advised his Miranda rights to be unsupported by any evidence of record. Based on the testimony at the

-9-

suppression hearing, we see no clear error in the district court's factual determination that Harper was conscious and knowingly waived his Miranda rights.

As to the coercive environment, Harper points only to the fact that Glendenning handcuffed him within seconds of the accident and that two off-duty officers stood closely over him as he lay on the ground handcuffed. However, Glendenning advised Harper of his Miranda rights in the ambulance, where he was the only officer present. The evidence produced at the suppression hearing well supported a finding that Harper's waiver of his Miranda rights was not the result of intimidation, coercion or deception, and that his will was not overborne. Therefore, the district court did not clearly err in finding that Harper's waiver of his Miranda rights was voluntary.

B.      District Court's Statements Regarding Probable Cause

Harper did not object to either of the district court's statements regarding the legal significance of an indictment. Accordingly, we review those statements for plain error.[4] United States v. Olano, 507 U.S. 725, 735-36 (1993); United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). Under the plain error standard, a

---

[4] Harper advocates that plain error review in this case does not comport with the purpose of Federal Rule of Criminal Procedure 52(b) because the district court's self-awareness of the inappropriateness of its initial comment triggered its sua sponte attempt to remedy the situation by making the second comment, thereby negating Harper's obligation to object to either statement. We respectfully disagree. "No procedural principle is more familiar . . . than that a constitutional right, or a right of any other sort, may be forfeited in criminal . . . cases by the failure to make timely assertion of the right." Olano, 507 U.S. at 731. "A party may not stand idly by, watching the proceedings and allowing the Court to commit error of which he subsequently complains." United States v. Hoelscher, 914 F.2d 1527, 1543 (8th Cir. 1990) (internal quotations omitted). Nothing prevented Harper from timely objecting to either of the district court's statements. Therefore, we will not depart from the plain error standard of review.

defendant has the burden to establish that there was an error, the error was plain and the error affected defendant's substantial rights. Olano, 507 U.S. at 735; Pirani, 406 F.3d at 550. However, we will exercise our discretion under plain error review to correct only errors serious enough to affect "the fairness, integrity or public reputation of judicial proceedings," such as circumstances "in which a miscarriage of justice would otherwise result." Olano, 507 U.S. at 735-36 (internal quotations omitted).

As a threshold matter, we note that the district court's statements regarding probable cause were correct statements of the law. The grand jury returns an indictment only upon a finding that there is probable cause to believe that a crime has been committed and criminal proceedings should be instituted against a particular defendant. United States v. Calandra, 414 U.S. 338, 343-44 (1974); United States v. Allen, 406 F.3d 940, 946 (8th Cir. 2005). Harper argues, however, that he was denied due process of law because the district court's statements to the venire divested him of the presumption of innocence.

The principle that a defendant is presumed innocent, although not articulated in the Constitution, is "'the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.'" Taylor v. Kentucky, 436 U.S. 478, 484 (1978) (quoting Coffin v. United States, 156 U.S. 432, 453 (1895)). A defendant is entitled to have his or her guilt determined solely based on the evidence introduced at trial, not official suspicion or indictment, and an instruction on the presumption of innocence is one manner in which a court can impress upon a lay jury the significance of that right. Id. at 485-86. The presumption of innocence operates to remind the jury that the government has the burden to prove each element of the offense beyond a reasonable doubt. Delo v. Lashley, 507 U.S. 272, 278 (1993); see also Arizona v. Fulminante, 499 U.S. 279, 291 (1991) (instruction on presumption is additional safeguard "beyond that provided by the constitutionally required instruction on reasonable doubt"); Kentucky v. Whorton, 441 U.S. 786, 789-90 (1979) (instruction on presumption constitutionally required only

-11-

if under totality of circumstances there exists genuine danger jury will convict based on something other than lawful evidence proved beyond reasonable doubt).

Circuits addressing the propriety of explaining to a petit jury the role a grand jury or indictment serves in criminal proceedings have concluded that such an explanation is not per se reversible error when, among other things, the district court's explanation was an accurate statement of law appropriate under the circumstances and the court correctly instructed the jury on the presumption of innocence, the government's burden of proof and the fact that an indictment is not evidence. See, e.g., United States v. Strauss, 678 F.2d 886, 889-90 (11th Cir. 1982) (collecting cases and holding that, in response to defense counsel's line of questioning, district court's statement that grand jury is permitted to hear testimony otherwise inadmissible at trial and will return an indictment only if it finds probable cause exists not reversible error); United States v. Garcia, 562 F.2d 411, 416-17 (7th Cir. 1977) (jury instruction during final charge explaining role of grand jury procedure in issuing indictment upon determination of probable cause not reversible error); cf. Brandom v. United States, 431 F.2d 1391, 1397 (7th Cir. 1970) (district court appropriately instructed petit jury of limited role of grand jury to correct improper prosecutorial statements).

We have condemned statements by prosecutors in the presence of the petit jury regarding the existence of probable cause or role of the grand jury because such statements improperly and unfairly suggest that a jury should return a conviction because a grand jury returned an indictment. See United States v. Lewis, 423 F.2d 457, 460 (8th Cir. 1970); Weaver v. United States, 379 F.2d 799, 802 (8th Cir. 1967). However, we have determined such statements do not warrant reversal when, in light of the record as a whole, any resultant prejudice was rendered harmless by curative efforts of the district court, including clear and accurate jury instructions on the presumption of innocence and burden of proof. See Lewis, 423 F.2d at 460; Weaver, 379 F.2d at 802; cf. Gordon v. United States, 384 F.2d 598, 600-01 (8th Cir. 1967) (reversal not warranted where grand jury instructed in presence of petit jury because

court took curative measures, instructed jury to strike any impression formulated and correctly instructed jury on applicable law).

Compared to statements by a prosecutor, the allegedly prejudicial statements regarding probable cause in this case came from the judge, the most authoritative figure in the courtroom. A trial judge is required to be "especially cautious and circumspect in language and conduct during a jury trial" because a "prejudicial comment from the bench is worse than all others because it has the air of official sanction." Rush v. Smith, 56 F.3d 918, 921 (8th Cir. 1995) (en banc) (citations omitted). "'It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his [or her] lightest word or intimation is received with deference, and may prove controlling.'" Id. at 921-22 (quoting Starr v. United States, 153 U.S. 614, 626 (1894) (alteration in original). Although the judge's statements were correct statements of the law, the problem in this case is the context in which the statements were made. A trial judge informing a jury panel during voir dire that probable cause exists or an indictment would not have been returned gives rise to the possibility that the jury may infer guilt by indictment, in direct derogation of a defendant's right to be presumed innocent. Therefore, we conclude the district court plainly erred when it interrupted defense counsel's voir dire and proceeded to twice inform the jury panel that probable cause existed to believe defendant was involved with the offenses.

To warrant relief under plain error review, however, Harper must establish the statements affected his substantial rights because they were prejudicial and there is a reasonable probability that the outcome of his trial would have been different had the court not made the statements. See Olano, 507 U.S. at 735-36; Pirani, 406 F.3d at 553. To determine whether the statements were prejudicial we review them in light of their immediate context, the trial as a whole and the timing and substance of the court's subsequent instructions to the jury. United States v. Johnson, 12 F.3d 827, 835 (8th Cir. 1994), abrogated on other grounds by Bailey v. United States, 516 U.S. 137

(1995). In <u>United States v. Johnson</u>, we concluded that a district court's statement during voir dire that the presumption of innocence remained with the defendant only until the jury began to deliberate did not entitle the defendant to relief under plain error review because any error was remedied when the district court proceeded to correctly state the burden of proof and instructed the jury on both the burden of proof and presumption of innocence. <u>Id.</u>

In this case, the statements occurred during voir dire in response to defense counsel's attempt to discern the significance, if any, the panel members placed on the fact that an indictment had been returned. The court ultimately excused for cause the only panel member who answered defense counsel's questions affirmatively. The district court did state, correctly, that an indictment is no indication of an individual's guilt, and at no point during the remainder of Harper's trial was any further comment or inflammatory argument made regarding the court's statements or the existence of probable cause. As to the court's subsequent instructions of law, the district court clearly and properly instructed the impaneled jury shortly following voir dire that the indictment was not evidence, but merely an accusation, and that the jury was to presume Harper innocent until proved guilty by the government beyond a reasonable doubt. (J.A. 70.) The trial lasted less than two days, at which point the district court further instructed the jury on the presumption of innocence and the government's burden of proof. (J.A. 83, 84, 87, 89.) Not only did Harper not object to either statement, he did not challenge the sufficiency of either set of the court's jury instructions to remedy any perceived prejudice that may have resulted from the court's statements regarding probable cause.

Harper argues that there is no way to ascertain whether the jury gave more weight to the district court's statements during voir dire or subsequent instructions of law. However, our theory of trial by jury is dependant upon the ability of jurors to follow instructions. <u>Opper v. United States</u>, 348 U.S. 84, 95 (1954) ("To say that the jury might have been confused amounts to nothing more than an unfounded

speculation that the jurors disregarded clear instructions of the court in arriving at their verdict."). We presume that "jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." Francis v. Franklin, 471 U.S. 307, 326 n.9 (1985). Accordingly, we presume juries to be composed of prudent, intelligent individuals, and we will not speculate whether jurors disregard the court's instructions of law or their oaths. See Gordon, 384 F.2d at 601.

In light of the foregoing considerations, we conclude that any ambiguity or prejudice that resulted from the district court's statements was remedied when the court excused for cause the relevant panel member and proceeded to twice correctly instruct the jury on the presumption of innocence, that an indictment is not evidence and the government's burden of proof. Therefore, Harper has not established that the statements affected his substantial rights, and we conclude he is not entitled to relief under the plain error standard of review.

C.      Judgment of Acquittal

We review de novo a district court's denial of a motion for judgment of acquittal. See United States v. Monnier, 412 F.3d 859, 861 (8th Cir. 2005). To determine whether the evidence was sufficient to support a conviction, "we view the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences." Id. We will reverse a district court's denial of a motion for judgment of acquittal only if the evidence is such that "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Simpson, 979 F.2d 1282, 1287 (8th Cir. 1992). Harper argues that the district court should have granted his motion for a judgment of acquittal because the government failed to prove beyond a reasonable doubt that he did not possess the firearms as a result of coercion. Stated differently, Harper argues the evidence was insufficient to support his

-15-

convictions in light of his testimony that he was coerced to possess the firearms by Deputy Young.

Harper's sole challenge on appeal is that judgment of acquittal was warranted because the government failed to rebut his coercion defense. Therefore, we must determine whether he was entitled to such a defense. We have not previously recognized a defense of coercion to violations of 18 U.S.C. § 922. See United States v. Taylor, 122 F.3d 685, 689 n.4 (8th Cir. 1997) (coercion defense not yet recognized by this circuit in § 922(g) prosecutions and rejecting justification defense to § 922(g) violation); United States v. Blankenship, 67 F.3d 673, 677 (8th Cir. 1995) (evidence insufficient to support coercion or justification defense to § 922(g) violation); cf. United States v. Bell, 411 F.3d 960, 964 (8th Cir. 2005) (justification defense consistently denied in § 922 cases when defendant failed to pursue lawful options); United States v. Lomax, 87 F.3d 959, 961 (8th Cir. 1996) (collecting cases and rejecting justification defense to § 922(g) violation). We decline to do so in this case.

Moreover, even if we were to permit a defendant to defend the unlawful possession of stolen firearms in violation of 18 U.S.C. § 922 on a theory of coercion, Harper did not produce facts sufficient to trigger the defense in this case. A defendant has the initial burden to introduce facts sufficient to trigger a district court's consideration of a coercion defense. Simpson, 979 F.2d at 1287; United States v. Campbell, 609 F.2d 922, 924 (8th Cir. 1979). If a defendant introduces evidence on each element of the defense, the government then has the burden to prove beyond a reasonable doubt that the defendant was not coerced. Simpson, 979 F.2d at 1287. A coercion defense is warranted only if a defendant establishes (1) an immediate threat of a nature sufficient to induce a "well-grounded apprehension of death or serious bodily injury" if the offense is not committed and (2) that the threat occurred in a situation in which there was no reasonable opportunity to avoid the danger. United States v. May, 727 F.2d 764, 765 (8th Cir. 1984) (per curiam); see also Campbell, 609 F.2d at 924; Simpson, 979 F.2d at 1287. A defendant cannot invoke the defense of

coercion if there existed an opportunity to avoid the act without threat of harm or a reasonable and legal alternative to the commission of the crime. Blankenship, 67 F.3d at 677-78; United States v. Wint, 974 F.2d 961, 968 (8th Cir. 1992); May, 67 F.3d at 765.

Harper failed to establish the immediacy of any perceived threat of serious bodily injury or death. Even if Deputy Young threatened Harper's life, as Harper claims, he did so on a prior, separate occasion. Harper feared, at most, that in the future Young might act on the prior threat. Such a generalized and speculative fear fails as a matter of law to establish an immediate threat for purposes of a coercion defense. See Campbell, 609 F.2d at 925 (prior death threats by prison gang members if defendant did not commit offenses insufficient to meet immediacy element). Moreover, Harper further failed to establish there was not a reasonable, legal alternative to his possession of the stolen firearms. Harper argues that he did not believe he could turn to law enforcement because Young was a deputy sheriff and therefore no viable alternative to the commission of the offense existed. Harper testified that reporting Young's initial request that he become an informant to his probation officer resulted in Young threatening his life. However, a defendant's subjective belief that going to law enforcement would prove futile is insufficient to meet the objective standard that there was no reasonable, legal alternative to violating the law. United States v. Jankowski, 194 F.3d 878, 883 (8th Cir. 1999). Nothing prevented Harper from informing law enforcement officials other than Young of the alleged threat to his life or disengaging in the criminal activity.

For all the above reasons, Harper was not entitled to a defense of coercion, and therefore the government was not required to prove beyond a reasonable doubt that Harper was not coerced. The district court was correct to deny Harper's motion for judgment of acquittal because the evidence was sufficient to support the jury's verdict.

D.     Jury Instruction

Harper argues that his testimony established a factual basis sufficient to support a defense of coercion and that the district court erred by refusing to instruct the jury on that defense. A defendant is entitled to a particular jury instruction when the instruction provides a correct statement of the law and is supported by the evidence. United States v. Gamboa, 439 F.3d 796, 816 (8th Cir. 2006). We review de novo a district court's determination that the evidence was insufficient to support submitting an instruction to the jury. Id. For the reasons stated above, Harper was not entitled to a coercion defense. Therefore, the district court properly declined to instruct the jury on the defense of coercion. See Blankenship, 67 F.3d at 677-78 (defendant who has opportunity to avoid commission of criminal offense not entitled to jury instruction on coercion defense).

E.     Sentencing Enhancements

Harper challenges the district court's application of a two-level enhancement under Sentencing Guidelines § 3C1.2 for reckless endangerment and a four-level enhancement under Sentencing Guidelines § 2K2.1(b)(5) for possessing the firearms in connection with another felony offense. We review de novo the district court's interpretation and application of the Sentencing Guidelines and we review for clear error the court's factual findings. United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005). A district court's finding regarding a defendant's purpose in possessing a firearm is a finding of fact. See United States v. Mack, 343 F.3d 929, 936 (8th Cir. 2003).

Pursuant to § 3C1.2, a two-level enhancement is warranted if a defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2.

-18-

"Recklessly" in this context means "the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." Id. § 2A1.4 app. n. 2; see also § 3C1.2 app. n.2. The district court did not make particular findings of fact to support the enhancement, but instead stated that high-speed chases inherently create a substantial risk of serious bodily injury to others. Harper challenges the district court's categorical approach to the application of the enhancement and failure to consider the particular facts of his flight.

We have not held that § 3C1.2 categorically applies to high-speed chases. We have determined, however, the enhancement applies when erratic driving or high-speed chases occur. See, e.g., United States v. St. James, 415 F.3d 800, 806 (8th Cir. 2005) (erratic driving at high speeds in congested streets endangered officers and public); United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004) (evasive high speed driving while intoxicated that involved crossing an intersection through oncoming traffic warranted enhancement); United States v. Powell, 283 F.3d 946, 948 (8th Cir. 2002) (defendant ran red light at high speed, collided with van and drove down wrong side of road). According to the trial testimony of Trooper Glendenning, Harper's flight persisted over three to four miles of county roads at speeds in excess of ninety miles per hour, ending only after Harper drove through a ditch, hit an embankment, entered Interstate-44 and spun out of control. That Harper was the only individual injured does not alter the risk of bodily injury created by his flight. Harper's flight recklessly endangered the safety of Glendenning and those traveling along the Laclede County roads and Interstate-44. Therefore, the district court did not err in applying the two-level enhancement.

Pursuant to § 2K2.1(b)(5), a four-level enhancement is warranted if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). "In connection with" means that, at a

minimum, the firearm had a "purpose or effect with respect to" the other felony offense because its presence facilitated or had the potential to facilitate the offense, as opposed to being the result of mere accident or coincidence. United States v. Regans, 125 F.3d 685, 686 (8th Cir. 1997) (citing Smith v. United States, 508 U.S. 223, 238 (1993)). "Another felony offense" for purposes of § 2K2.1(b)(5) does not include firearms possession or trafficking offenses. U.S.S.G. § 2K2.1 app. n.15; see also United States v. Kenney, 283 F.3d 934, 938 (8th Cir. 2002).

At sentencing, the district court determined that Harper's possession of the firearms facilitated his transportation and continued possession of the firearms, his possession and operation of the stolen Trailblazer and his high-speed flight. The district court erred to the extent it determined the § 2K2.1(b)(5) enhancement applicable because Harper's firearm possession facilitated his continued possession and transportation of the firearms. See U.S.S.G. § 2K2.1 app. n.15. The government argues, however, that Harper's possession of the firearms facilitated his commission of tampering with a motor vehicle and resisting arrest by flight, both felony offenses under Missouri law.

Harper does not dispute that tampering in the first degree is a felony under Missouri law.[5] See Mo. Ann. Stat. § 569.080 subd. 2. Rather, Harper argues his possession of nine firearms played no meaningful role in the offense. In United States v. Mack, however, we held that "a defendant's maintenance of a firearm at an easily accessible location while in a stolen car permits the inference that the firearm emboldened the defendant to continue his illegal conduct." 343 F.3d 929, 936 (8th Cir. 2003) (citation omitted). In Mack, the victim of a recent car theft saw the

_____

[5] Under Missouri law, a person commits the crime of tampering in the first degree if, among other things, "he or she knowingly receives, possesses . . . or unlawfully operates an automobile . . . without the consent of the owner." Mo. Ann. Stat. § 569.080 subd. 1(2).

defendant sitting in the parked, stolen vehicle, and the defendant was arrested for tampering with a motor vehicle, a class C felony under Missouri law. Id. at 931. In conducting a search incident to arrest, the officers discovered an empty shoulder holster on the defendant, a bag containing twenty .38 caliber cartridges and four firearms inside the stolen vehicle. Id. Following a conviction under 18 U.S.C. § 922(g)(3), the district court enhanced the defendant's sentence pursuant to § 2K2.1(b)(5) based on the felony offense of tampering with a motor vehicle under Missouri law. Id. at 936. We affirmed, holding the district court "did not clearly err in determining that the driver of a stolen vehicle containing four handguns used or possessed those handguns in connection with the underlying felony of tampering with the same vehicle." Id.

In this case, it is undisputed that Harper knowingly possessed nine firearms while operating a stolen vehicle. Glendenning seized a fully loaded 9-millimeter pistol from the driver's seat of the Trailblazer and eight rifles from elsewhere in the vehicle. In light of our holding in Mack, we conclude that the district court did not clearly err in finding that Harper's possession of firearms had the potential to facilitate his commission of the felony offense of tampering in the first degree. Because we conclude the enhancement is warranted based on that offense, we need not resolve whether the possession of the firearms also facilitated the offense of resisting arrest by flight.

## III.  CONCLUSION

For the reasons stated, we affirm the district court in all respects.

_____

-21-