# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2776

_____

United States of America

*Plaintiff - Appellee*

v.

Tracy Jones, also known as Tracy Wilcox

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: May 9, 2023
Filed: June 15, 2023

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

On November 10, 2020, a grand jury indicted Tracy Jones for conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Arrested on November 17, she was detained for 37 days before appearing before a magistrate judge on December 23. Jones moved to dismiss the indictment and suppress her statements from a post-arrest interview. The

district court denied both motions. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On November 17, 2020, police arrested Jones pursuant to a federal warrant. She agreed to waive her *Miranda* rights. Within two hours after her arrest, she confessed to the conspiracy. The interrogation lasted about 44 minutes. The next day, she was transported to the Pennington County Jail in Rapid City.

That day, law enforcement notified the United States Marshal that Jones was in custody. No one notified the United States magistrate judge. On December 23, the government realized Jones was still detained without an initial appearance. That day, she was presented before the magistrate judge. Jones moved to dismiss the indictment, claiming the 37-day delay violated Fed. R. Crim. P. 5(a)(1)(A) and the Due Process clause of the Fifth Amendment. Jones also moved to suppress her statements from the post-arrest interview.

The district court[1] denied both motions. She pled guilty to conspiracy to distribute 500 grams or more of meth in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). The district court[2] sentenced her to 120 months in prison. Jones appeals the denials of the motions.

This court reviews *de novo* the district court's denial of a motion to dismiss. ***United States v. Cooke***, 853 F.3d 464, 470 (8th Cir. 2017). "This court reviews a district court's factual determinations in support of its denial of a motion to suppress

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota, adopting the report and recommendations of the Honorable Mark A. Moreno, United States Magistrate Judge for the District of South Dakota.

[2]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

for clear error and its legal conclusions de novo." *United States v. Ingram*, 594 F.3d 972, 976 (8th Cir. 2010).

## II.

No doubt, the 37-day delay between Jones's arrest and her initial appearance before a magistrate judge violated Rule 5(a). *See United States v. Chavez*, 705 F.3d 381, 385 (8th Cir. 2013) (ruling that the 24-day delay between the suspect's arrest and initial appearance before a magistrate judge violated Rule 5(a)). But, dismissal of an indictment is not a proper remedy for a Rule 5(a) violation. *See id.* at 386 ("Despite the district court's error in finding no Rule 5(a) or Fourth Amendment violation, dismissal is not the appropriate remedy.").

Jones argues that the indictment should be dismissed because the delay in presentment violated her substantive due process rights.

To determine whether a delay in presentment violates substantive due process, this court determines whether, based on the totality of the circumstances, the government's conduct "offends the standards of substantive due process" and "shocks the conscience." *Hayes v. Faulkner Cnty.*, 388 F.3d 669, 674 (8th Cir. 2004). "The level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.'" *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993), *quoting United States v. Jacobson*, 916 F.2d 467, 469 (8th Cir. 1990). *See United States v. Boone*, 437 F.3d 829, 841 (8th Cir. 2006) ("Outrageous government conduct that shocks the conscience can require dismissal of a criminal charge, but only if it falls within the 'narrow band' of the 'most intolerable government conduct.'"), *quoting Pardue*, 983 F.2d at 847. "Deliberate indifference to prisoner welfare may sufficiently shock the conscience to amount to a substantive due process violation." *Hayes*, 388 F.3d at 674. "Whether particular government conduct was sufficiently outrageous to meet this standard is a question of law which we review de novo." *Boone*, 437 F.3d at 841.

Jones claims the 37-day delay violated her substantive due process rights, relying on *Hayes v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004). Hayes was arrested based on an outstanding warrant on April 3, 1998. *Hayes*, 388 F.3d at 672. He did not appear before a magistrate judge until May 11. *Id.* During this period, Hayes wrote four grievances to the jail administrator. One grievance stated:

> I've been here for 23 days and have not been to court. According Prompt First Appearance Rule 8.1[3] I should seen a judge within 72 hrs. I have yet to be told when I will go to court. I also know that the arresting told booking to hold me back. I want to know when you plan to obay the law and allow me to go to court?

*Id.* The jail administrator responded: "I don't set people up for court. I hope you go to court & are able to get out. Write the booking officer to find out about your court date." *Id.*

Hayes sued Faulkner County, its sheriff, and the jail administrator under 42 U.S.C. § 1983. *Id.* This court held that the jail administrator violated his due process rights, emphasizing that after "receiving Hayes's specific appearance grievance, [the jail administrator] made a conscious decision to do nothing." *Id.* at 674. This court noted that the jail administrator showed no remorse, testifying "he would have followed the same conduct even if Hayes were held for 99 days." *Id.* at 672. This court held that the jail administrator's "conscious disregard is deliberate indifference violating the standards of due process." *Id.* at 674.

The *Hayes* decision is different than the present case. The delay here resulted, as the district court found, from law enforcement's "nonfeasance in notifying the magistrate judge of Jones's arrest," and this failure was not "outrageous" or

---

[3]*See* **Ark. R. Crim. P. 8.1** ("An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay.").

intentionally done "to further investigation efforts." This conduct, while inexcusable neglect, is not the "quite high" level of "outrageousness" to "shock the conscience" and amount to a substantive due process violation. *See Pardue*, 983 F.2d at 847.

Jones asserts that law enforcement officers in South Dakota have a "pattern" of delaying defendants' initial appearances, citing two cases where defendants moved to dismiss indictments based on delays in their initial appearance. One defendant experienced a 15-day delay in presentment to the magistrate judge. *United States v. Theus, II*, CR-20-10045 (D.S.D. March 19, 2021) (recommending a denial of the motion to dismiss because the delay was not "egregiously lengthy as to require a dismissal of the case"; district court ultimately dismissed the case due to the defendant's death). In a second case, the district court denied the motion to dismiss the indictment because, like here, the seven-day delay in presentment was "not purposeful, but due to personnel, training, and communication issues, slip ups, and poor policies." *United States v. Bobtail Bear*, CR-14-10011 (D.S.D. May 19, 2021 & Oct. 15, 2021) (discussing a delay occurring in 2021). Two mistakes do not establish a pattern of outrageousness sufficient to show deliberate indifference and support a due process violation.

The district court properly denied the motion to dismiss the indictment.

### III.

Jones seeks to suppress the statements from her post-arrest interview. She argues that her *Miranda* waiver was involuntary because the agent's pre-warning statements were an unlawful two-step interrogation under *Missouri v. Seibert*, 542 U.S. 600 (2004) and that her confession was involuntary under *United States v. Aguilar*, 384 F.3d 520 (8th Cir. 2004). "We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006).

"[W]hen an individual is taken into custody . . . he must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444. "A waiver is voluntary if it 'was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Harper*, 466 F.3d at 643, *citing* *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

In the *Seibert* case, the police, as trained, questioned Seibert for 30 to 40 minutes about an incident before giving *Miranda* warnings. *Missouri v. Seibert*, 542 U.S. 600, 604-05 (2004). The police then gave Seibert a 20-minute break, bringing her back to the interview room where she agreed to waive her *Miranda* rights. *Id.* at 605. After the police immediately referenced her earlier statements, she confessed. *Id.* The Supreme Court held that "when an interrogator uses this deliberate, two-step strategy, predicated upon violating *Miranda* during an extended interview, postwarning statements that are related to the substance of prewarning statements must be excluded absent specific, curative steps." *Id.* at 621 (Kennedy, J., concurring in the judgment). The Court reasoned: "the [two-step] technique simply creates too high a risk that postwarning statements will be obtained when a suspect was deprived of 'knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Id.*, *quoting* *Moran*, 475 U.S. at 423-24.

In the *Aguilar* case, police conducted a "lengthy interview," questioning Aguilar for about 90 minutes before giving the *Miranda* warnings. *United States v. Aguilar*, 384 F.3d 520, 522 (8th Cir. 2004). Aguilar agreed to waive his *Miranda* rights and confessed. *Id.* Applying *Seibert*, this court determined that Aguilar's confession was involuntary because the duration of pre-warned questioning was "not

brief." *Id.* at 527. The scope of the pre-warned questioning was also broad—prompting Aguilar to clearly recall events from three months earlier. *Id.* at 525.

Jones emphasizes specific pre-warning statements by the agent:

- **SPECIAL AGENT:** The charge that you're charged with is a federal meth conspiracy. And it's a ten-year mandatory minimum, okay? What that means, unless you already know what that means --
- **JONES:** Not really.
- **SPECIAL AGENT:** Okay. What that means is, if you were convicted of the charge that you're charged with right now, okay, a federal judge has to sentence you to ten years or more --

. . . .

- **JONES:** Okay.
- **SPECIAL AGENT:** There is only a few ways to alleviate that, to clear that up.
- **JONES:** Okay.
- **SPECIAL AGENT:** And that's strictly Tracy Jones Wilcox's decision --
- **JONES:** Uh-huh.

. . . .

- **SPECIAL AGENT:** -- okay? If we go that route, because you decide to go that route, we talk truthfully, then we can do things on the federal side in front of the judge at some point that says, Okay, Judge, you can go below that ten year, okay? And I can explain any of that to you if you want.
- **JONES:** Okay.

. . . .

These statements are different than those in *Seibert* and *Aguilar*. Here, the pre-warning conversation was brief and narrow in scope—the entire pre-warning conversation took about two minutes. In the pre-warning statements, the agent did not question Jones about her involvement in the conspiracy. The agent informed her about the charges against her and the statutory mandatory minimum sentence for the charges. The district court specifically found that the interview was polite and conversational and "what agents said and did (both before and after the *Miranda*

waiver) had little or no effect on Jones." The district court properly concluded that these brief, narrow-scope pre-warning statements were not a two-step interrogation in violation of *Seibert*, and that Jones's statements were voluntary.

The district court properly denied the motion to suppress.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____