UNITED STATES of America,
Plaintiff(s),

v.

Hector J. SANTIAGO–RAMOS
[1], Defendant(s).

Criminal No. 12–358(DRD).

United States District Court,
D. Puerto Rico.

Jan. 10, 2014.

Maria L. Montanez–Concepcion, United States Attorney's Office, Hato Rey, PR, for Plaintiff.

Jose R. Olmo–Rodriguez, Olmo & Rodriguez Matias, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before the Court are the following motions: (a) *Motion to Suppress* filed by defendant Héctor Junior Santiago–Ramos, Docket No. 18; (b) *United States of America's Response in Opposition to Defendant's Motion to Suppress Evidence (Docket No. 18) and Further Motion to Suppress (Docket No. 20),* filed under Docket No. 24; (c) *Brief in Support of Motion to Suppress,* Docket No. 75; and, (d) *United States of America's Memorandum in Support of the Response in Opposition to the Motion to Suppress Evidence,* Docket No. 90. For the reasons set forth below, the defendant's motion to suppress is denied, as the Court concludes first that the defendant lacks standing for the defendant lacks an expectancy of privacy in a vehicle in which the defendant has no possessory or ownership interest.

### Issue

But even if the defendant has standing, then the issue before the Court is one particularly based on credibility, that is, whether or not under the doctrine of plain view, the intervening agent indeed viewed

a firearm and drugs inside the vehicle Toyota 4Runner ("Toyota 4Runner") at the time the defendants were detained for having tinted glass windows darker than the tint color permitted by Puerto Rico law. The Court deems that the credibility is on the side of the policemen. The Court explains both scenarios.

## Factual and Procedural Background

The facts are relatively simple. On April 25, 2012, on or about 7:00 p.m., the defendant Héctor Junior Santiago–Ramos ("Santiago–Ramos") was detained by two patrolling police agents nearby Las Catalinas Mall in Caguas, Puerto Rico, as the tinted glass windows of the Toyota 4Runner appeared to be darker than the shade permitted by law. Following the detention, and after the driver has rolled down the car windows, the agents observed a firearm, a fanny bag with three loaded magazines and drugs inside the detained vehicle, which are now subject of defendant Santiago–Ramos' motion to suppress. *See* Docket No. 18, page 2. The two patrolling agents are from the Puerto Rico Police Department ("PRPD") and the Caguas Municipal Police ("CMP").

On May 31, 2012, defendant Santiago–Ramos filed a *Motion to Suppress,* Docket No. 18, alleging that "there was no legal authority for the officers to intervene, stop and search the vehicle." *See* Docket No. 18, page 2. "The agents only had a suspicion as to the legality of the tinted glasses." *Id.* "In such a case, as provided in the corresponding regulations, the officer has to conduct a test using a particular photometer device." *Id.* "There is no reason to order the defendant to lower the windows." *Id.* "Quite the contrary, the windows must be closed in order to conduct the test." *Id.* "The alleged traffic violation is nothing more than a pretext for the obvious intentions of the officers." *Id.* Defendant Santiago–Ramos further alleges

that the patrolling agents ordered him out of the car, and proceeded to search "the vehicle and bags inside the vehicle." *Id.* at page 3. Hence, the result of the search without an order is invalid, as well as any evidence and statements obtained through the illegal search are invalid and not admissible at trial. *Id.* Defendant moved the Court to set a suppression hearing.

The United States of America (the "Government") replied on June 19, 2013, opposing the setting of a suppression hearing, as the defendant has failed "to establish that [he] has standing; because the genesis of this case was a valid traffic stop; and because the arrest of the defendants was performed based on probable cause, no violation of their Fourth Amendment rights was committed in this case." *See* Docket No. 24, page 15. The Government alleges that when the gray Toyota 4Runner was stopped by the patrolling agents Santiago–Ramos claimed that he was not the owner of the vehicle nor has authorization from the owner to use it. *See* Docket No. 24, page 6. "In fact, none of the defendants have provided evidence that they are in fact the owners of the vehicle, neither do they argued that arrangements were made to obtain authorization to use the same." *Id.* "Therefore, until Defendant [Santiago–Ramos] can unequivocally prove that [he] is the owner of the vehicle or have a possessory interest in it, [he] lacks standing to challenge the search of the same." *Id.* Defendant Santiago–Ramos also moved the Court to suppress all the items seized following the traffic stop, as "there was no legal authority for the officers to intervene, stop and search the vehicle," even if the objects seized were at plain view. *See* Docket No. 90, page 3.

As to the warrantless search and the plain view exception, the Government set forth the factors to be met in order for the warrantless search to be valid. In support

of its argument, the Government made reference to *United States v. Allen*, 573 F.3d 42, 51 (1st Cir.2009), wherein the Court held that several factors must be met to validate a warrantless search: "(1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a 'lawful right of access to the object itself.' "

On June 17, 2013, a Suppression Hearing was held. *See* Minutes of June 17, 2013, Docket No. 67. Post-hearing memorandums were filed by the parties. *See Brief in Support of Motion to Suppress* filed by plaintiff, Docket No. 75, and the *United States of America's Memorandum in Support of the Response in Opposition to the Motion to Suppress Evidence* filed, Docket No. 90.

### Applicable Law and Discussion

#### A. The Fourth Amendment Challenge.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Amendment IV of the Constitution of the United States of America.

In *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court held that "the Fourth Amendment protects people, not places," *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and "wherever an individual may harbor a reasonable 'expectation of privacy,' *id.* at 361, 88 S.Ct. 507, (Mr. Justice Harlan, concurring), he is entitled to be free from unreasonable governmental intrusion.... For 'what the Constitution forbids is not all searches and

seizures, but unreasonable searches and seizures.' *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)." 392 U.S. at 9, 88 S.Ct. 1868. "The question is whether in all the circumstances of this on-the-street encounter, his right to personal security was violated by an unreasonable search and seizure." *Id.*

In *Rakas v. Illinois*, 439 U.S. 128, 143–144, n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Court determined that in a vehicle search, an aggrieved person who has "asserted neither a property or a possessory interest in the automobile, nor an interest in the property," ... "lacks a legitimately expectation of privacy." 439 U.S. at 148, 99 S.Ct. 421. Hence, there is no Fourth Amendment infringement.

In *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), the Court held:

> [W]e confirm today what our prior cases have intimidated: the standard of probable cause "applie[s] to all arrests, without the need to 'balance' the interests and circumstances involved in particular situations." *Dunaway v. New York*, 442 U.S. 200, 208, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). **If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.** (Emphasis ours).

In *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir.2011), held:

> The Fourth Amendment bans only *unreasonable* searches and seizures, *see, e.g., Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and a search done without a warrant supported by probable cause is presumptively unreasonable unless an exception to the warrant requirement applies, *see, e.g., United States v. Lopez*, 989 F.2d 24, 26 (1st Cir.1993). So we jump directly

to the exception that applies here. (Emphasis on the original).

**An officer can stop a car if he sees a driver commit a traffic offense, even if the stop is just an excuse to investigate something else.** *See Whren* [*v. United States* ], 517 U.S. 806, 810, 116 S.Ct. 1769[, 135 L.Ed.2d 89 (1996) ]. He can then order the occupants out of the auto. *See, e.g., Maryland v. Wilson,* 519 U.S. 408, 410, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). And if he has some articulable, reasonable suspicion[1] that the persons stopped maybe dangerous, he can pat them down and search the car's interior—including closed compartments—for weapons that they could quickly lay their hands on.

. . .

**In sorting out the reasonableness of an officer's actions in this context, we typically ask two questions: Was he justified in making the stop? And, if yes, was the protective search reasonably related to the events justifying the stop, factoring what happened and what he learned during the encounter?** *See, e.g., United States v. Ivery,* 427 F.3d 69, 72 (1st Cir.2005); *United States v. Chhien,* 266 F.3d 1, 6 (1st Cir.2001). To answer the second question, we must ask two more: Was there an objectively reasonable basis to suspect that weapons were present? And . . . did the officer in fact entertain such a suspicion? . . . Obviously, then, context matters, and we must take a practical approach to all of this, keeping in mind the totality of the circumstances as

seen and interpreted by the police at the scene. *See, e.g., United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *United States v. Soares,* 521 F.3d 117, 120 (1st Cir.2008). (Emphasis ours).

■ In the instant case, the Court finds that defendant Santiago–Ramos has failed to present any evidence showing that he was indeed the legal owner of the Toyota 4Runner, or had the owner's authorization to use it. Hence, Santiago–Ramos has failed to show that he has an expectation of privacy at the time the Toyota 4Runner was detained and searched. *See United States v. Symonevich,* 688 F.3d 12, 19 (1st Cir.2012). In *Symonevich,* the defendant was a passenger in a car, and the Court held:

**The Fourth Amendment's protection against unreasonable searches may only be claimed where a defendant demonstrates that he or she personally has a reasonable expectation of privacy in the place searched.** *See Rakas* [*v. Illinois* ], 439 U.S. [128], 143–44, n. 12, 99 S.Ct. 421[, 58 L.Ed.2d 387 (1978) ]. As a general proposition, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his [or her] Fourth Amendment rights infringed." *Id.* at 134, 99 S.Ct. 421. **In the context of a vehicle search, a passenger who has "asserted neither a property nor a possessory interest in the automobile, nor an interest in the**

---

**1.** In *McGregor,* 650 F.3d at 821, the Court defined "reasonable suspicion" as:

> **No simple, mechanical formula tells us what reasonable suspicion is, though we know that it is less than probable cause and more than a naked hunch.** *See, e.g., United States v. Chhien,* 266 F.3d 1, 6 (1st Cir.2001). **And no one-size-fits-all temp-**

**late exists to sketch out whether an officer acted with reasonable suspicion.** *See, e.g., United States v. Espinoza,* 490 F.3d 41, 46 (1st Cir.2007). Rather, courts must gauge its presence in a commonsense, case-by-case way, taking in the whole picture. *See, e.g., Chhien,* 266 F.3d at 6. (Emphasis ours).

**property seized,**" has made no showing that he or she has a legitimate expectation of privacy in, for example, the area under the seat of the car in which he or she was "merely [a] passenger [ ]." *Id.* at 148, 99 S.Ct. 421. Under such circumstances, a vehicle search does not infringe upon the passenger's Fourth Amendment rights. Thus, the passenger lacks standing to challenge the search. (Emphasis ours).

The Court further held that "[t]he burden to establish a reasonable expectation of privacy lies squarely on the movant." *Symonevich,* 688 F.3d at 21, n. 6, citing *United States v. Lipscomb,* 539 F.3d 32, 35–36 (1st Cir.2008). *See also United States v. Campbell,* 741 F.3d 251 (1st Cir. 2013) ("Following the decision of the Supreme Court in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), we have held squarely that passengers in an automobile who assert no property or possessory interest in a vehicle cannot be said to have the requisite expectation of privacy in the vehicle to permit them to maintain that the search did not meet Fourth Amendment standards"), citing *United States v. Symonevich,* 688 F.3d 12, 19, 21 (1st Cir.2012).

Hence, defendant Santiago–Ramos has no right to allege that the search of the detained vehicle is illegal, as well as the seizure of the objects seized inside the vehicle, as he has no standing to claim a Fourth Amendment violation. If Santiago–Ramos is not the owner of the detained Toyota 4Runner nor was authorized by the owner to use it, as no proof was offered as to the latter, the defendant does not have an expectation of privacy. *Rakas v. Illinois,* 439 U.S. at 143–144, n. 12, 99 S.Ct. 421.

■ But even if he is the owner, which the defendant Santiago–Ramos has failed to prove, then we examine in the alternative whether the officer had "a reasonable, articulable suspicion of an individual's involvement in some criminal activity," *United States v. Dunbar,* 553 F.3d 48, 56–57 (1st Cir.2009), citing *United States v. Ruidíaz,* 529 F.3d 25, 28 (1st Cir.2008). The Court in *Dunbar* further held that:

> Reasonableness in this context is a construct that must be judged according to objective criteria; it is not dependent on an individual officer's subjective motives. [*United States v. Ruidíaz,* 529 F.3d] at 29. This inquiry into reasonableness "requires a reviewing court to consider the **totality of the surrounding circumstances**" and make a "commonsense determination" that entails some deference to the perceptions of experienced officers. *Id.* (Emphasis ours).

*See also United States v. Kellam,* 568 F.3d 125, 136 (4th Cir.2009), the Court applied the objective test to determine "whether a vehicle stop for a minor traffic violation was pretextual," citing *United States v. Hassan El,* 5 F.3d 726, 730 (4th Cir.1993). "Under this test, 'if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. That is so regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity.' " *Id.* 568 F.3d at 136.

■ In the case at bar, the patrolling agents had probable cause to stop the vehicle, as the Toyota 4Runner's tinted windows were too dark, and in violation of Puerto Rico law, 9 L.P.R.A. § 5285.[2] Fur-

---

**2.** 9 L.P.R.A. § 5285 provides in its relevant part:

The use of one-way glass for the windshield and glass windows of vehicles or motor vehicles is hereby prohibited. The altering

thermore, **when the vehicle's driver's window was lowered by defendant Santiago–Ramos to respond to the patrolling agent's inquiry, a strong smell of marijuana came out of the inside of the vehicle, hence, the officer had a reasonable suspicion of other criminal activity. The situation worsened when the other patrolling agent, who was standing outside on the passenger side of the vehicle, saw when defendant Santiago–Ramos made a move of a weapon that he had next to his thigh and threw it to the floor underneath the driver's seat.** Hence, the fact that there was a weapon inside the detained vehicle turned the traffic stop in a potential dangerous situation. A "police may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons of there is a reasonable belief that they are armed and dangerous." *Michigan v. Long,* 463 U.S. 1032, 1047–1048, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), citing *Pennsylvania v. Mimms,* 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). "Our decision rested in part on the 'inordinate risk confronting an officer as he approaches a person seated in an automobile.'" *Id.* "'The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* at page 1050, 103 S.Ct. 3469, citing *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested." *Id.* "If, while conducting a legitimate *Terry* search of the interior of the automobile,

thereof by applying tints and any other material or product used as a solar filter on the windshield and windows of motor vehicles to produce a percentage of transmission of visible light of less than thirty-five percent (35%), is likewise prohibited. Official vehicles of the Commonwealth of Puerto Rico duly authorized by the Secretary, as well as ambulances; bullet-proof vehicles for the transportation of securities, vehicles specially designed and devoted exclusively to the transportation of tourists and those vehicles factory-equipped with tinted windshields or rear glass windows that are not paper and that produce a percentage of light transmission that is less than that indicated in this section, are exempted from applying the provisions in this section. Upon evaluation of the corresponding request, the vehicles or motor vehicles that the Secretary certifies to such effects for security reasons or that are contracted by the Commonwealth of Puerto Rico to render security services shall also be exempted from these provisions. Rear windshields or windows are understood to be all those located in the vehicle or motor vehicle behind the drivers' seat.

. . .

Every driver who operates a vehicle or motor vehicle in violation of this section shall incur an administrative fault and shall be sanctioned with a fine of fifty dollars ($50). The person who commits the violation shall be granted a term which shall not exceed twenty-four (24) hours to appear at the designated police station to show that the deficiency has been corrected. If the person who committed the violation fails to appear within the established time frame, said person shall be sanctioned with an additional fifty-dollar ($50) fine. When the person who committed the violation appears within the term granted herein and shows that the tints or other material or products installed in violation of the provisions of this section have been removed, the fine imposed according to the provisions of this section shall be filed. Likewise, the inspection permit established in § 5352 of this title shall be denied to any applicant whose vehicle fails to comply with the provisions of this section.

Removal and transfer of the seal of approval for transmission of visible light is prohibited herein, as well as alteration of the circumstances that allow the Puerto Rico Police to grant the seal of approval of visible light transmission. Any person who violates the provisions of this paragraph shall incur a misdemeanor and, upon conviction, shall be sanctioned with a penalty of five hundred dollars ($500).

the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Michigan v. Long,* 463 U.S. at 1050, 103 S.Ct. 3469, citing *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). (Emphasis ours).

In the instant case, the Government informed the Court that defendant Héctor Junior Santiago–Ramos was not the owner of the Toyota 4Runner, prior to the interrogation of the witness Agent Ricardo Castro Ortega. *See* Transcript of the Suppression Hearing of June 17, 2013, Docket No. 71, page 4. The defense, however, was unable to show otherwise to the Court, and just limited his arguments to say that defendant Santiago–Ramos is not the owner of the car, and the agent did not have an order to search the car:

> THE COURT: ... is he [defendant Santiago–Ramos] the owner of the car?
>
> AUSA MONTANEZ: No, he's not the owner of the car.
>
> MR. OLMO: He [defendant Santiago–Ramos] is not the owner of the car, but he's in possession and control, and that is what the agent says. He didn't have an order, Your Honor.
>
> THE COURT: You don't need an order if you have a tinted glass situation. I can get stopped, and the policeman, what's he is going to do, he has to ask for a driver's license, right, and the vehicle registration card. The windows go down, he smell marijuana. That's what your motion says.

█ In sum, it is well settled that if the defendant is not the owner of the car, then he/she does not have any expectancy of privacy under the Fourth Amendment. *See United States v. Symonevich,* 688 F.3d at 19, "[t]he Fourth Amendment's protection against unreasonable searches may only be claimed where a defendant demonstrates that he or she personally has a reasonable expectation of privacy in the place searched," citing *Rakas,* 439 U.S. at 143–144, 99 S.Ct. 421. Defendant Santiago–Ramos admitted at the suppression hearing through his counsel that he is not the owner of the Toyota 4Runner. *See* Transcript, Docket No. 71, page 4. This admission forecloses any suppression request.

## B. The Warrantless Search and the Plain View Doctrine.

█ "The plain view doctrine allows officers to 'seize an item if they have a lawful right of access to the item seized and the object's incriminating nature is immediately apparent.'" *United States v. Rodriguez,* 711 F.3d 928, 936–937 (8th Cir. 2013), citing *United States v. Nichols,* 344 F.3d 793, 799 (8th Cir.2003) (*per curiam* ). ... "It is illegal for an 'unlawful user of ... any controlled substance' to possess a firearm. 18 U.S.C. § 922(g)(3)." *Id.* at 937. "The Government is not required to prove that the defendant possessed the firearm while contemporaneously using a controlled substance." *Rodriguez,* 711 F.3d at 937, citing *United States v. Mack,* 343 F.3d 929, 933 (8th Cir.2003). "It is sufficient for the government to demonstrate use of a controlled substance 'during the period of time' that the defendant possessed firearms, not there was actual use 'at the time that the officers discovered [the defendant] in possession of firearms.'" 711 F.3d at 937, citing *Mack,* 343 F.3d at 933. *See also United States v. Sanchez,* 612 F.3d 1 (1st Cir.2010).

In *United States v. Jones,* 187 F.3d 210, 219–221 (1st Cir.1999), the Court set forth the three elements of the plain view doctrine, as discussed by the United States Supreme Court in several cases:

First, the officer must lawfully have reached the position from which he plainly could view the seized object. *See, e.g., Horton* [*v. California*], 496 U.S. [128], 136, 110 S.Ct. [2301, 110 L.Ed.2d 112 (1990) ] ("an essential predicate to any valid warrantless seizure of incriminating evidence [is] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"); *Arizona v. Hicks,* 480 U.S. 321, 326, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (initial warrantless intrusion must be lawful) (citation omitted); [*Texas v.*] *Brown,* 460 U.S. [730], 739, 103 S.Ct. [1535, 75 L.Ed.2d 502 (1983) ] (plurality opinion) (officers may seize property without a warrant if they perceive it while engaged in a lawful activity). [Trooper] Sanzi's actions unquestionably satisfy this element of the plain view doctrine because, as we already have discussed, reasonable suspicion justified the troopers' decision to stop the car, and Sanzi did not violate the law by directing Jones to exit the vehicle or by questioning him. All of these actions constituted appropriate investigative steps in a lawful *Terry* [*v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] stop, a context in which the Supreme Court has recognized that officers may lawfully seize contraband they observe despite the absence of a warrant. *See Minnesota v. Dickerson,* 508 U.S. 366, 374, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) ("[P]olice officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a *Terry* search."); *Michigan v. Long,* 463

U.S. 1032, 1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

Second, the seizure must satisfy the probable cause standard, *see Soldal v. Cook County,* 506 U.S. 56, 66, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); [*Arizona v.*] *Hicks,* 480 U.S. [321,] 326, 107 S.Ct. [1149, 94 L.Ed.2d 347 (1987) ], and in the context of a *Terry* stop, the officer must be "acting within the lawful bounds marked by *Terry* at the time he gained probable cause," *Dickerson,* 508 U.S. at 377, 113 S.Ct. 2130.

· · ·

[P]robable cause is a flexible, commonsense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. [*Brown,* ] 460 U.S. at 742, 103 S.Ct. 1535.

· · ·

Finally, the plain view exception to the warrant requirement necessitates that the officer "have a lawful right of access to the object itself." *Horton,* 496 U.S. at 138, 110 S.Ct. [2301]. The Supreme Court repeatedly has recognized that officers have a right of access to contraband that they discover while acting within the bounds of a lawful Terry investigation. *See, e.g., Long,* 463 U.S. at 1050, 103 S.Ct. [3469] (citing plain view doctrine cases in support of proposition that "[i]f, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."); *Brown,* 460 U.S.

at 738 & n. 4, 103 S.Ct. [1535] (noting that police have legal access to property that they "come across ... while acting pursuant to some exception to the Warrant Clause" and citing *Terry* as one example).

*See also Symonevich,* 688 F.3d at 20–21, citing *New York v. Class,* 475 U.S. 106, 112–113, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) ("One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view"), (quoting *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality opinion) (internal quotation marks omitted)), and *St. Hilaire v. City of Laconia,* 71 F.3d 20, 28 n. 6 (1st Cir.1995) ("Fourth Amendment law ... recognizes a distinction between a person's home and a person's car. For example, the Fourth Amendment permits a slightly broader search pursuant to the arrest of the occupant of a vehicle and some warrantless searches of vehicles are permitted even if there are not emergency circumstances.") ...).

■ The core of this matter is whether the objects seized after a warrantless search triggered by a traffic stop detention are lawful under the plain view doctrine, as the windows were lowered for the driver to respond to the policeman. After a thorough review of the evidence presented by the parties at the suppression hearing, the Court finds the issue is foreclosed as defendant was not the owner and, hence, lacks a privacy interest. Therefore, the defendant's arrest was justified under

probable cause, as the defendant lowered the car window and a marijuana odor stemmed from the car. Further, the other policeman saw the weapon from close range, after "Agent Hernández [who] was intervening [with] the driver ... and the persons who were inside [the Toyota 4Runner] ... had lowered the windows." *See* Transcript, Docket No. 71, page 15.

As stated above, the defendant Santiago–Ramos was detained by the patrolling agents "suspecting that the tinted windows [of the Toyota 4Runner] were in violation of the of the Puerto Rico Traffic Laws, 9 L.P.R.A. § 5285," and conducted a traffic stop. *See* Docket No. 24, page 2. Thereafter, the agents activated the protocol corresponding to the traffic violation. *Id.* The patrolling agents approached the detained vehicle "and instructed the driver to roll down the windows." *Id.* The driver was defendant Santiago–Ramos, and he was accompanied by two other individuals, co-defendant Miguel A. Vázquez–Mitchell,[3] who was sitting next to Santiago–Ramos in the passenger seat, and a minor who was seated in the rear left side of the vehicle, that is, behind the driver's seat.

When the patrolling agents approached the detained vehicle, and the defendant Santiago–Ramos was ordered to lower the windows, a strong smell of marijuana came out, and one of the agents who was standing on the right side of the car, that is, near the passenger seat area, observed when the driver moved a firearm that was under his right thigh and throw it between his feet. *See* Transcript, Docket No. 71, page 17. Thereafter, "when he [the defendant Santiago Ramos] opened the door and he leaves the vehicle, gets out of the vehicle, I [Agent Castro] observed that the pistol that he [defendant Santiago Ramos]

---

**3.** The record shows that the defendant Miguel A. Vázquez–Mitchell pled guilty on September

24, 2013. *See* Docket No. 99.

put on the floorboard has an extended magazine." *Id.* at pages 18–20.

THE COURT: That means that it's more than 16 bullets . . . more than 15 bullets?

THE WITNESS: Correct.

. . .

MS. MONTANEZ: And what was the threat at that moment?

THE WITNESS: There was a firearm in the vehicle.

THE COURT: There was a loaded firearm in the vehicle, or was the peine

. . .

MS. MONTANEZ: The magazine.

THE COURT: . . . or was the magazine not clipped?

THE WITNESS: It turned out to be that it was loaded, the magazine was in the weapon.

MS. MONTANEZ: What did you do after you put all these three persons on the back part of the 4Runner?

THE WITNESS: Once they are outside the 4Runner and they are away from the danger area, I went towards Hector [Santiago Ramos], who was the person that I saw handling the firearm, and I asked him if he had a license to carry a weapon. He makes a gesture at me, as if he didn't know what I was talking about. I asked him did he have any license to carry a weapon, and he said no. And because of that, I then proceeded to give his legal warning; I searched him for his safety and mine, and I placed him under arrest.

THE COURT: Did you say that you gave him the warnings?

THE WITNESS: Correct, yes.

THE COURT: Exactly what did you tell him?

THE WITNESS: That he was going to be detained for carrying a firearm without being properly authorized to do so; that he had a right to remain silent, everything that you say can be used against you. You are entitled to counsel. If you don't have the means to provide a lawyer, the state will provide one for you. You are entitled to a phone call. You can, if you want, give a voluntary statement, and you may be accompanied by a lawyer at an interview.

. . .

MS. MONTANEZ: And what did you do after these persons [an adult and minor that were passengers in the Toyota 4Runner] were already in the official vehicles?

THE WITNESS: **Once I took Hector to the vehicle where I was traveling in, he said to me that everything that in there** [Toyota 4Runner] **belonged to him and those who were with him had nothing to do with that** [the objects seized from the inside of the Toyota 4Runner]. I told him to remain there in the vehicle. I went to the area where the SUV was at, after each of them had gotten out of the SUV, the doors for each, that is, when I returned to the driver's side area, I was able to observe that between the two front seats there's this newspaper page, it was opened, and on it there was a transparent plastic bag with Ziploc, and in it you were able to see marijuana shredding, and on the paper there also was tobacco shredding. And in addition to that, there was this tobacco cigarette with marijuana in it. *See* Transcript, Docket No. 71, pages 23–24.

In sum, several objects were seized as a result of the traffic stop, to wit: (a) a firearm of the type black Glock, model 31, caliber .357, Serial number LLS–892, and

a 22 rounds magazine, *see* Exhibit No. 4; (b) a different serial number on the slide of the firearm, Serial number LFL–382, *see* Exhibit No. 5; (c) cocaine; (d) marijuana; (e) the fanny bag with the magazines. *See* Transcript, Docket No. 71, pages 22–24, 32.

The fact that a firearm was seen inside the vehicle and the strong smell of drugs immediately triggered a telephone call to the Technical Services Division of the Puerto Rico Police Department to photograph the scene. *See* Transcript of June 17, 2013 of the Suppression Hearing held before the undersigned, Docket No. 71, page 36, lines 2–9. "ICE personnel that was near that location was also notified. The ICE personnel arrived at the site very quickly, and they immediately took charge of the scene and took charge of the case." *Id.*

The witness was further questioned by Mr. Olmo, defense counsel, on the firearm found on the Toyota 4Runner:

MR. OLMO: I'm showing you Exhibit A. Is that the same way—is that object, the firearm, located in the same exact place where you first saw it?

THE WITNESS: No.

MR. OLMO: Where was it when you first saw it?

THE WITNESS: In the hands of Mr. Hector Santiago.

MR. OLMO: ... after you allegedly saw Mr. Santiago with the gun in his hand, and after you and your partner instruct them to exit the vehicle, when you went back, did you find the pistol in that same area or did you move it?

THE WITNESS: No, it was in that area.

MR. OLMO: And you did not move the rug and found the pistol under the rug, right?

THE WITNESS: No, I just simply looked.

MR. OLMO: It was right there on a silver plate for you to find it?

THE WITNESS: It was where he [defendant Santiago Ramos] put it.

MR. OLMO: If we were to make a fingerprint analysis of that weapon, will we find your fingerprints on it? ... Is it possible that the weapon has your fingerprints on it?

THE WITNESS: No.

MR. OLMO: Why?

THE WITNESS: Because I didn't touch it.

THE COURT: So who retrieved it, or did you retrieve it with a handkerchief?

THE WITNESS: No, that was done by ICE personnel.

. . .

THE COURT: ... Everything apparently is, as stated by him, plain view.

MR. OLMO: Is there space underneath that front seat where you could hide a firearm?

THE COURT: Another firearm?

THE WITNESS: There is space.

. . .

THE COURT: The question is whether you moved them and put them on the floor?

THE WITNESS: No.

. . .

*See* Transcript, Docket No. 71, pages 51–54.

THE COURT: Hold it. His prior testimony was that some of those objects he saw after, after they had all exited the car.

MR. OLMO: Can I have this marked as ID, please.

THE COURT: What he saw plain view was the change of the weapon from

the right-hand side to the middle of his two feet, and apparently dropped there, because the persons apparently left the car without a weapon in their hand.

. . .

THE COURT: Fine. I think it's superfluous as to all the other items but the weapon, because all the other items were found after they all exited the car. It is only valid as to the weapon. All right? It is only valid as an obstruction to the weapon, because the record so far is that the only thing that he saw plain view originally was the exchange of the weapon. However, he can take into consideration for his own volition, the fact that he heard the other guard state that there was a smell of marijuana. It doesn't count for the jury as evidence, but it counts to him to explain that he decided to make a full, through inspection of the car, even though it turned out to be all plain view. All right? Go ahead.

*See* Transcript, Docket No. 71, pages 64–65.

In view of the foregoing, the Court finds that: (a) the traffic stop made by the patrolling agents responded to a "reasonable suspicion" that the color of the tinted windows of the Toyota 4Runner were in violation of Puerto Rico law, 9 L.P.R.A. § 5285; (b) there is no Fourth Amendment violation, as defendant Santiago–Ramos is not the owner of the Toyota 4Runner nor was the defendant authorized to have possession of the vehicle, hence, Santiago–Ramos has no expectancy of privacy; (c) the warrantless search of the vehicle was warranted after Santiago–Ramos was stopped for a traffic violation, as the tinted glass of the automobile's windows was darker than the tint shade permitted by law, and even more so, after the patrolling agents detected a strong smell of marijua-

na when defendant Santiago–Ramos lowered the driver's window to respond to the agents' inquiry; (d) the agent that was standing outside on the passenger's side saw a suspicious move made by defendant Santiago–Ramos trying to conceal a weapon that he was carrying next to his thigh by throwing the weapon to the floor underneath the driver's seat; (e) the agent next to the passenger's side also view a fanny bag, which turned out to have marijuana and ammunition for the concealed weapon. There is no significance on whether or not the tinted glass in fact was an actual violation, as the issue is one of probable cause to stop under a *Terry* traffic stop. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

After the evidence presented at the suppression hearing, the Court agrees with the patrolling agents that after assessing the totality of the circumstances, the situation turned into a potentially dangerous situation, as there were drugs and a weapon involved, and the actions taken by the agents to protect their safety, as well as the safety of the three individuals that were inside the vehicle, the warrantless search of the vehicle was warranted.

### Conclusion

In view of the foregoing, the *Motion to Suppress* filed by defendant Santiago–Ramos under Docket No. 18, is hereby denied.

The Clerk will set a Status Conference soon after January 21, 2014, to set this matter for trial.

IT IS SO ORDERED.